## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:  1:19-cv-03381-RM-KLM

JANET AGARDY, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

FAMILY DOLLAR STORES, INC.,

      Defendant.

_____

### FIRST AMENDED CLASS ACTION COMPLAINT
_____

      Plaintiff Janet Agardy ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Family Dollar Stores, Inc., ("Defendant" or "Family Dollar"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and its implementing regulations (the "ADA"), for declaratory and injunctive relief, attorneys' fees, and expenses.

### INTRODUCTION

      1.     This is a case about putting profit ahead of the rights of people with disabilities.

      2.     Defendant's Colorado Family Dollar stores are cluttered with merchandise, merchandise displays, stocking carts, boxes, and other items that block or narrow interior aisle pathways.

      3.     Although cluttered and blocked aisles may only be a mild inconvenience for some people, for Plaintiff and others who use a wheelchair or other device for mobility, the congestion results in unlawful access barriers and consequently a deprivation of basic civil rights guaranteed to people with disabilities by the ADA.

4.      The problem is compounded when Family Dollar has ingrained itself into a small community where there are limited options for shopping.

5.      Plaintiff lives in a small town and regularly visits the community's one Family Dollar store.

6.      During Plaintiff's visits she has been repeatedly denied full and equal access as a result of accessibility barriers existing in interior paths of travel. These access barriers include but are not limited to: merchandise, merchandise displays, stocking carts, boxes, and/or other items, positioned so that they impermissibly block or narrow the aisle pathways such that there is less than thirty-two inches of clearance. Plaintiff has encountered the same types of barriers on multiple occasions and has been repeatedly deterred from returning as a result. These conditions violate the ADA and deny Plaintiff's equal access to Family Dollar stores.

7.      The access barriers at issue in this matter are not temporary and isolated. They are systemic, recurring, and reflective of Defendant's policies and practices.

8.      The inaccessible conditions of Family Dollar stores have reached a boiling point for many communities across the country, and over the past few years, Defendant has faced an onslaught of localized Department of Justice enforcement actions, investigative news articles, public outcry, and civil enforcement actions that all seek to hold Family Dollar accountable and to improve its stores' conditions so that they are accessible to the public.

9.      Counsel for Plaintiff has overseen an investigation into Family Dollar's Colorado stores which has confirmed the widespread existence of interior access barriers that are the same as, or similar to, the types of barriers directly experienced by Plaintiff.

10.     Plaintiff asserts that the inaccessible conditions found in Family Dollar's Colorado stores are a function of Defendant's regional policies, procedures, and practices.

11.     Upon information and belief, Family Dollar actively and negligently facilitates the messy conditions within its Colorado-region stores based on a calculated judgment that doing so will increase sales revenues and profits. This occurs in two ways.

12.     First, Family Dollar positions merchandise, merchandise displays, and/or other items, so that they block or narrow the aisles pathways of its Colorado-region stores. This is an intentional business practice intended to impede interior paths of travel in order to increase sales revenue and profits.

13.     Second, Family Dollar's stores are understaffed, the employees are overworked, and the stores are not equipped to handle the volume of merchandise shipped to the stores and required to be stocked. These problems are symptoms of Defendant's calculated decisions to address regional underperformance, which result in Family Dollar stores lacking the resources required to ensure that the stores are readily accessible. The negligent consequences of Defendant's cost-saving measures are repeatedly and persistently inaccessible Family Dollar stores.

14.     Plaintiff brings this lawsuit to put Family Dollar on notice that its Colorado stores are inaccessible and that the public will not tolerate Defendant's decision to prioritize its profits before the rights of people.

15.     In accordance with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

a)  Defendant remediate all interior path of travel access barriers at Defendant's Colorado stores, or Defendant's stores in the operational region encompassing Colorado, consistent with the ADA;

b) Defendant change its policies and practices to ensure its Colorado stores, or Defendant's stores in the operational region encompassing Colorado, are fully accessible to, and independently usable by, individuals who use wheelchairs or scooters; and

c) Plaintiff's representatives shall monitor Defendant's Colorado stores, or Defendant's stores in the operational region encompassing Colorado, to ensure that the injunctive relief ordered pursuant to this Complaint has been implemented and will remain in place.

## OVERVIEW OF APPLICABLE LAW

16. The ADA requires Family Dollar to provide individuals who use wheelchairs or scooters with the full and equal enjoyment of its goods, services, facilities, privileges, advantages, and accommodations, and further requires that when Family Dollar stores are open to the public, they must be "readily accessible". 42 U.S.C. §§ 12182(a) and 12183.

17. In order for Family Dollar's stores to be "readily accessible" under Title III of the ADA, merchandise on fixed aisle shelving must be located on an accessible route. The applicable "accessible route" standards are set forth in the 2010 Standards at Section 403.5.1.

18. ADA Figure 403.5.1 explains that an accessible route must be a minimum of 36 inches, but can be reduced to 32 inches for a length of no more than 24 inches (for example, doors) so long as the 32 inch segments are at least 48 inches apart. *See* ADA Figure 403.5.1 *available at* https://www.access-board.gov/guidelines-and-standards/buildings-andsites/about-the-ada-standards/ada-standards/chapter-4-accessible-routes

19. The ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, or accommodations to individuals with

disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

20.    The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

## JURISDICTION AND VENUE

21.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

22.    Plaintiff's claims asserted herein arose in this judicial district, and Defendant does substantial business in this judicial district.

23.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

24.    Plaintiff Janet Agardy is, and at all times relevant hereto was, a resident of Dove Creek, Colorado.

25.    Plaintiff is an individual with a mobility disability, who is substantially limited in the major life activity of walking, and uses a wheelchair for mobility. She is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

26.    Plaintiff is a regular customer of Defendant's stores who desires equal access to Defendant's goods and services. Plaintiff is also serving as a tester in this matter, in that she is actively seeking to hold Family Dollar accountable by observing the inaccessibility of its stores.

*See, e.g., Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211-12 (10th Cir. 2014); *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 457 (4th Cir. 2017); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.,* 867 F.3d 1093, 1102 (9th Cir. 2017); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74 (1982).

27.     Defendant Family Dollar Stores, Inc. is a Delaware corporation, and is headquartered at 500 Volvo Parkway, Chesapeake, Virginia 23320.

28.     Family Dollar is a variety general store chain, with over 8,000 locations across the United States except in Alaska, Hawaii, Oregon, and Washington.

29.     Family Dollar was acquired by its parent corporation, Dollar Tree Stores, Inc., in 2015.

30.     On information and belief, there are approximately 129 Family Dollar stores in Colorado.

31.     Defendant's Family Dollar stores are places of public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS

**I.     Plaintiff Has Been Denied Full and Equal Access to Defendant's Stores.**

32.     Plaintiff resides in Dove Creek, Colorado, a small community with less than a thousand residents. There are only a few general stores in town where Plaintiff can shop for goods, and the community's sole Family Dollar store has been an important resource for Plaintiff, serving both as an important source of goods and a critical social outlet, allowing her to interact with the community.

33.    Plaintiff lives a little less than half a mile from Defendant's Family Dollar store located at 468 US-491, Dove Creek, Colorado 81324 (the "Dove Creek Store").

34.    Plaintiff often and regularly shops at the Dove Creek Store, including most recently in October 2019.

35.    During Plaintiff's visits to the Dove Creek Store, she has repeatedly encountered interior access barriers within the store, including but not limited to merchandise, merchandise displays, boxes, and stocking carts, which narrowed interior paths of access to less than thirty-two inches in width. These barriers precluded Plaintiff's equal access to Defendant's goods and services in violation of the ADA's equal access mandate, generally, and the requirements of the 2010 Standards Section 403.5.1. Plaintiff would shop at Defendant's stores more often, and with less difficulty, if Defendant's stores were readily accessible.

36.    Plaintiff has repeatedly attempted to alert management at the Dove Creek Store, as well as a district manager and representatives at Defendant's company headquarters, about the barriers she has been encountering, but she has been rebuffed each time and the barriers continue to occur.

37.    A separate investigation of the Dove Creek Store, conducted on behalf of Plaintiff, revealed the same types of access barriers that Plaintiff has repeatedly encountered, that narrow the pathway to less than thirty-two inches in width, as depicted in the images below:



*Figure 1 – Family Dollar, 468 US-491, Dove Creek, Colorado 81324*



*Figure 2 – Family Dollar, 468 US-491, Dove Creek, Colorado 81324*



*Figure 3 – Family Dollar, 468 US-491, Dove Creek, Colorado 81324*

38.     Plaintiff has also shopped at Defendant's stores located at 324 S Broadway, Cortez, Colorado 81351 and at 50 E Center St, Monticello, Utah 84535, where she has encountered similar barriers.

39.     The barriers depicted above illustrate some, but not all, of the types of interior access barriers at Defendant's stores. Collectively, these barriers impeded Plaintiff's access to Defendant's stores.

40.     As a result of Defendant's non-compliance with the ADA, Plaintiff's rights to full and equal, non-discriminatory, and safe access to Defendant's goods and facilities has been denied.

41.     Plaintiff will be deterred from returning to and fully and safely accessing Defendant's facilities so long as Defendant's stores remain non-compliant, and so long as Defendant continues to employ the same policies, procedures, and practices that have led, and in the future will lead, to inaccessibility at Defendant's Colorado Family Dollar stores.

42.     Nonetheless, Plaintiff would like to continue to visit Defendant's stores, both to attempt to access goods and services in those stores and to survey the stores for compliance with the ADA.

43.     Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendant's facilities in violation of her rights under the ADA.

44.     As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Family Dollar, have access barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

**II.     Defendant Denies Individuals With Disabilities Full and Equal Access to its Stores.**

45.     Defendant is engaged in the ownership, management, operation, and development of, upon information and belief, 129 Family Dollar stores in Colorado.

46.     A sampling investigation of Defendant's Colorado Family Dollar locations was conducted and revealed the same inaccessible conditions that were present in the Dove Creek Store were also present in the following stores:

a)   131 E Main Street, Naturita, Colorado 81422;

b)   283 Palomino Trail, Ridgeway, Colorado 81432;

c)   310 Bayfield Ctr, Bayfield, Colorado 81122;

d)   324 S Broadway, Cortez, Colorado 81351;

e)   479 32 Rd, Clifton, Colorado 81520;

f)   560 W Menefee Street, Mancos, Colorado 81328;

g)   1001 Goddard Avenue, Ignacio, Colorado 81137;

h)   1009 Railroad Avenue, Dolores, Colorado 81323;

i)   2776 Acrin Avenue, Grand Junction, Colorado 81503;

j)   3000 F Road, Grand Junction, Colorado 81503.

47.     The barriers usually take the form of merchandise or merchandise-related equipment and materials. Below are representative exemplar images of the types of barriers which narrow paths to less than thirty-two inches in width that are routinely and persistently occurring at Family Dollar's Colorado stores:



*Figure 4 – Family Dollar – Aisle blocked by boxes, displays, merchandise, and cart.*



*Figure 5 – Family Dollar – Merchandise and displays narrowing aisle.*



*Figure 6 – Family Dollar – Stocking equipment blocking aisle.*

48.     As the owner, operator, and manager of its properties, Defendant employs policies, practices, and procedures with regard to the operation of its stores.

49.     However, these policies, practices, and procedures are inadequate in that Defendant's stores are operated in violation of the accessibility requirements of Title III of the ADA.

50.     Plaintiff asserts, on information and belief, that Defendant is actively facilitating the discriminatory conditions within its stores on a regional and/or divisional basis through the use

of policies, procedures, and practices that are intended to either drive profits and/or to mitigate financial losses but which result in inaccessible stores.

### III.   Family Dollar Actively Facilitates Discriminatory Conditions in its Stores.

#### A.   Dollar Tree's acquisition of Family Dollar.

51.   Family Dollar was acquired by its former rival, Dollar Tree, in 2015 for a cash-and-stock offer of roughly $9.1 billion. *See Family Dollar Shareholders Approve Dollar Tree Deal*, Reuters (Jan. 22, 2015).[1]

52.   Prior to its acquisition, Family Dollar was under pressure from activist investors, who pushed the company to sell itself because of their perception that Family Dollar stores were neglected and underperforming. *See Dollar Tree is Still Struggling to Fix Its $9 Billion Family Dollar Albatross*, Fortune (Nov. 30, 2018).[2]

53.   Indeed, Family Dollar stores were already well known for messy and cluttered conditions in 2014. *See, e.g., Family Dollar's Biggest Problem in 3 Photos and a Vine*, HuffPost, (June 11, 2014) ("Family Dollar stores have *way* too much merchandise on the floor. So much, in fact, that you can't even comfortably walk down some aisles.") (Emphasis in original).[3]

54.   After it became apparent that Dollar Tree was facing a massive undertaking in improving Family Dollar's performance, analysts and investors began to question the wisdom of Dollar Tree's acquisition of Family Dollar, and as sales began to fall at Family Dollar, Dollar

---

[1]   Available at https://www.reuters.com/article/us-family-dollar-st-offer-meeting/family-dollar-shareholders-approve-dollar-tree-deal-idUSKBN0KV1PR20150122 as of February 28, 2020.

[2]   Available at https://fortune.com/2018/11/30/dollar-tree-family-dollar-2/ as of February 28, 2020.

[3]   Available at https://www.huffpost.com/entry/family-dollars-biggest-problem-photos_n_5479837 as of February 28, 2020.

Tree's stocks began to lower. *See, e.g., Dollar Tree Misses Comparable Sales Estimates on Family Dollar Weakness*, Reuters (Aug. 30, 2018);[4] *Dollar Tree Suffering from 'Weaker' Family Dollar*, RetailDive (May 31, 2018).[5]

55.     Family Dollar's leadership has made some efforts to improve Family Dollar's performance, including operational changes, some store renovations, and the closure and/or conversion of hundreds of underperforming stores. *See, e.g., Family Dollar Nears Completion of Renovations for these Charlotte Stores*, The Charlotte Observer (Feb. 18, 2020) ("Last spring, Dollar tree announced it would close as many as 390 under-performing stores in 2019, convert up to 200 Family Dollar stores into Dollar Trees and renovate another 1,000 Family Dollars".).[6]

56.     Despite their efforts, in the first fiscal quarter of 2020, Dollar Tree was downgraded again in response to margin pressures from its Family Dollar division. *See Dollar Tree Stock Drops After Getting Downgraded Again*, Barrons (Jan. 23, 2020).[7]

57.     As described by a known retail industry analyst, there are "fears that the costs of remodeling Family Dollar stores will outweigh the demonstrated 10-12% same-store sales lifts seen in renovated stores in the second half of the fiscal year, especially because these changes are

---

[4] Available at https://www.reuters.com/article/us-dollar-general-results/dollar-tree-misses-comparable-sales-estimates-on-family-dollar-weakness-idUSKCN1LF1A0 as of February 28, 2020.

[5] Available at https://www.retaildive.com/news/dollar-tree-suffering-from-weaker-family-dollar/524682/ as of February 28, 2020.

[6] Available at https://www.charlotteobserver.com/news/business/biz-columns-blogs/whats-in-store/article240369746.html as of February 28, 2020.

[7] Available at https://www.barrons.com/articles/dollar-tree-stock-drops-after-getting-downgraded-again-51579819357 as of February 28, 2020.

increasing sales of low-margin items... heightened shipping costs and increased shoplifting will also pressure margins". *Id.*

58.     Other cited risks include Dollar Tree's developing efforts to combine all of its merchandising, sourcing, and store operations between its Dollar Tree and Family Dollar divisions. *Id.*

59.     Through the acquisition of Family Dollar to the present day, the financial and operational pressures of salvaging Family Dollar have spurred Defendant to adopt a series of cost-savings measures, intended optimizations, and profit-driving strategies.

60.     On information and belief, Plaintiff asserts that the combination of Defendant's cost-saving and profit-driving efforts is actively facilitating the inaccessible Family Dollar stores localized in specific regions throughout the United States, including the Colorado-region.

**B.      National attention of regionalized problems.**

61.     Since Family Dollar's acquisition in 2015, the retail chain has increasingly become a national focal point of inaccessible store conditions in economy-model retails stores, specifically because of cluttered aisles that are difficult to navigate.

62.     For example, in 2017, the Huffington Post updated an investigative news article, *Family Dollar's Biggest Problem in 3 Photos And a Vine*, about the stores' messy conditions. *See, supra,* n. 3. The article highlighted how there are "stacks of boxes [that] sit in an aisle because apparently there's nowhere else to put them", likely because of "inventory overload" and a lack of focus on "how to unload trucks and move the product onto shelves in an orderly way." *Id.*

63.     More recently, a series of investigative news pieces came out in 2019 highlighting the same kinds of problems. *See, e.g., A Nasty Look Filth, Clutter Define Local Family Dollar Store*, The Spirit, (Feb. 20 2019) ("[A]isles are blocked by items and trash that make it impossible

to navigate");[8] *Local Family Dollar Closes Over What Some Say Are "Deplorable" Conditions*, Local Memphis (Nov. 7 2019);[9] *We Visited Dollar Tree, Dollar General, and Family Dollar to Compare, and Only One Wasn't a Messy Disaster Inside*, Business Insider (Dec. 22, 2019) ("[T]he [Family Dollar] store had a lot of distracting clutter in the aisles… It seemed as if a lot of items were waiting to be unloaded onto the shelves, which made the appearance of the store rather unsettling.").[10]

64.    The general public has also become agitated by the inaccessibility of their local Family Dollar stores. For example, one small community in Nevada launched a change.org petition to lobby Family Dollar's corporate offices to help their understaffed local Family Dollar store. Over 400 people have signed the petition, with many commenting on how the store's persistent inaccessibility impacts them and their community:

- "Our store is always behind unloading and the floor is constantly full of boxes and its difficult to maneuver around…. it's really hard to get around the store when you have to turn around out of every aisle or leave the cart because it can't make it. We really need help".

- "It's so sad because being such a rural community with so many elderly people.… it's scary to even think that our elders are going into this store."

- "Being Tonopah's only real option for reasonably priced shopping, they have gotten away with this as there really isn't much choice for patrons to take their business elsewhere…. It just goes to show that they're a corporation that is all about their bottom line and not about their employees or customers."

---

[8] Available at http://chesterspirit.com/2019/02/a-nasty-look-filth-clutter-define-local-family-dollar-store/ as of February 28, 2020.

[9] Available at https://www.localmemphis.com/news/local-biz/local-family-dollar-store-close-over-what-some-say-are-deplorable-conditions/ as of February 28, 2020.

[10] Available at https://www.businessinsider.com/dollar-general-dollar-tree-family-dollar-stores-compared-messy-2019-12 as of February 28, 2020.



*Figure 7 – Change.org - Tonopah, NV residents petitioning Family Dollar to clean-up store.[11]*

65.     The inaccessible conditions within Family Dollar stores have not gone unnoticed by authorities, however.

66.     In 2019, Family Dollar was investigated by the U.S. Department of Justice in Rhode Island for failing to ensure that its stores' interior paths of access are unimpeded. Family Dollar agreed to a Settlement Agreement with the United States in September 2019 "under which it is

---

[11] Available at https://www.change.org/p/family-dollar-corporate-headquarters-tonopah-nv-family-dollar-needs-corporates-assistance as of February 28, 2020.

required to undertake steps to review, identify, and address accessibility issues inside and outside of all 29 stores located in Rhode Island to bring them into compliance with the American with Disabilities Act (ADA)".[12]

67.    "According to the Settlement Agreement, Family Dollar Stores of Rhode Island, which cooperated fully with the investigation, has agreed to ensure that its employees will not place merchandise, shopping carts, boxes, and/or any other items in areas of its facilities, including both inside and outside of its stores, where such placement reduces or eliminates accessibility; will hire or designate an employee to serve as an ADA Coordinator with sufficient training and authority to undertake meaningful efforts to ensure that all [Rhode Island] Family Dollar Stores are in compliance with the Agreement; and within 60 days all regional, district and store managers and employees will undergo complete training regarding Title III of the ADA." *Id.*

68.    Local officials have also taken action. For example, county officials recently suspended and revoked the business license of a Family Dollar after receiving multiple citizen complaints and handing out enforcement violations concerning the blockage of emergency exits in stocking rooms due to piles of boxes and merchandise. *See Rockdale County Shuts Family Dollar Store Down for Code Violations*, www.rockdalenewtowncitizen.com (Oct. 23, 2019).[13]

69.    Family Dollar is now facing civil lawsuits in the regions where its inaccessible stores are most problematic, including in the Western District of Pennsylvania, the Southern District of Florida, the Northern District of Illinois, and California state court. *See Lewandowski*

---

[12] Available at https://www.justice.gov/usao-ri/pr/ri-family-dollar-stores-address-ada-compliance-issues as of February 28, 2020.

[13] Available at https://www.rockdalenewtoncitizen.com/news/rockdale-county-shuts-family-dollar-store-down-for-code-violations/article_792098be-f5dd-11e9-aa3b-d34ec6f71339.html as of February 28, 2020.

*v. Family Dollar Stores Inc.*, No. 2:19-cv-0085 (W.D. Pa.); *Agardy v. Family Dollar Stores, Inc.*, No. 1:19-cv-03381 (D. Co.); *Disability Advocates and Counseling Group, Inc. v. Dollar Tree, Inc. d/b/a Family Dollar Stores*, No. 1:19-cv-20478 (S.D. Fl.); *Reneau v. Family Dollar Stores, Inc.*, No. 1:20-cv-00938 (N.D. Il.); *Martinez v. Family Dollar Stores, Inc.*, No. 20-STCV-03676 (Cal. Super. Ct.).

70.     As reflected by these enforcement actions, although Family Dollar's policies and practices may increase profits for Family Dollar, it comes at the expense of basic civil rights guaranteed to people with disabilities by the ADA.

**C.     Family Dollar prioritizes profits over the rights of people by actively facilitating discriminatory conditions.**

71.     As stated by former North Carolina Commerce Secretary Sharon Decker, who previously served on Family Dollar's board of directors: "Communities depend on these stores". *Family Dollar Shareholders Approve Takeover by Dollar Tree*, Reuters (Jan. 22, 2015). [14]

72.     Plaintiff depends on her local Family Dollar. And she has tried her hardest to notify Family Dollar of the inaccessible conditions at the Dove Creek Store. But just like the residents of Tonopah, Nevada, whose desperate public petitioning of Family Dollar to help their understaffed and overloaded store went unheeded by Family Dollar's corporate offices, Plaintiff's efforts have not resulted in any accessibility improvements.

73.     Despite the public outcry, the news articles, and the numerous enforcement actions, Family Dollar's lack of response to Plaintiff and the others who have demanded accessible stores is unsurprising: Family Dollar is under intense pressure from all sides, from investors and analysts,

---

[14] Available at https://www.npr.org/2015/01/22/379130126/family-dollar-shareholders-approve-takeover-by-dollar-tree as of February 28, 2020.

to its parent company, which is still losing money from its recent and risky acquisition of Family Dollar.

74.     Family Dollar must improve its profits, and it is undertaking all possible efforts to do so, including at the expense of the rights of individuals with disabilities.

75.      First, Family Dollar positions merchandise and merchandise displays so that they block or narrow the aisle pathways of its stores.

76.     This practice is intentional, and driven by a calculated judgment that impeding interior paths of travel increases sales revenue and profits. *See, e.g.*, *Stuff Piled in the Aisle? It's There to Get You to Spend More*, The New York Times (April 7, 2011) ("As it turns out, the messier and more confusing a store looks, the better the deals it projects. Historically, the more a store is packed, the more people think of it as value — just as when you walk into a store and there are fewer things on the floor, you tend to think they're expensive") (internal citations omitted);[15] *see also, Why a Messy, Cluttered Store is Good for Business*, Time Magazine, (April 8, 2011).[16]

77.     Second, Family Dollar relies on regionalized and/or divisional policies and practices for stocking, staffing, and shipments that ensure its stores will routinely and systematically become inaccessible because of excess merchandise and merchandise-related equipment that cannot be adequately stored or stocked, resulting in cluttered, messy, and inaccessible stores.

78.     In effect, Family Dollar understaffs its stores and fails to ensure that there is an adequate amount of trained staff available and capable of handling the amount of merchandise

---

[15] Available at https://www.nytimes.com/2011/04/08/business/08clutter.html as of February 28, 2020.

[16] Available at http://business.time.com/2011/04/08/why-a-messy-cluttered-store-is-good-for-business/ as of February 28, 2020.

regularly delivered to Family Dollar stores that is required to be stocked in a manner that does not create persistent inaccessible conditions, such as impeded interior paths of travel.

79.    Understaffing and overloading at Family Dollar stores is nothing new. For example, in 2014 the Court of Appeals for the Eleventh Circuit affirmed a jury's finding that store "managers" at Family Dollar were being overworked and denied overtime pay by Family Dollar for their routinely 60 to 70 hour work weeks. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1239 (11th Cir. 2008).

80.    More recently, Family Dollar was in the news when a viral story broke about a working mother who couldn't pump breastmilk because she was the only assigned employee for the store. After reaching out to human resources and being told to "run back and forth every couple of minutes to pump in between customers", she decided to briefly close the store. As one observer noted: "Even understaffed, moms gotta do what they gotta do." *Viral Photo Shows Woman Closed Family Dollar Store to Pump Breast Milk*, Today (Feb. 22, 2019);[17] *see also 'We Quit' Sign on Family Dollar Store in Corinth Signals Problems*, Bangor Daily News (Feb. 22, 2020) (reporting on employees who quit by closing their store and hanging up a sign, with one observer, apparently an employee at the store, noting "'The company really was completely unfair with everything they did,' said [the employee], who started working at the store at the beginning of December. 'The manager left so we were down to four employees.'").[18]

---

[17]  Available  at  https://www.today.com/parents/viral-photo-shows-woman-closed-family-dollar-store-pump-breast-t149251 as of February 28, 2020.

[18] Available in archived format at https://web.archive.org/web/20200224045212/https://bangordailynews.com/2020/02/22/news/penobscot/we-quit-sign-on-family-dollar-store-in-corinth-signals-problems/  as of February 28, 2020.

81.     In addition to understaffing, Family Dollar fails to ensure that there is adequate floor space, both retail and backroom, within its stores to accommodate the amount of merchandise that Family Dollar ships to and requires its stores to have on hand.

82.     As explained above, local enforcement efforts have highlighted backroom storage problems at Family Dollar stores. The backroom storage problems are symptoms of Defendant's operational negligence of understaffing and overloading, as demonstrated in the following image showing an overloaded stock room:



*Figure 8 – Cluttered storage room at Family Dollar store.*[19]

83.     As experienced by Plaintiff, and demonstrated through the sampling investigation, when a store's backroom storage is at capacity, the overflow begins to occupy available retail space.

---

[19] *Supra* n. 14.

84.     These conditions also evidence that Family Dollar fails to ensure that its staff are adequately trained to ensure that its stores are readily accessible to individuals with mobility disabilities.

85.     The combined effect of these shortcomings, which are a function of operational cost-savings and mitigation efforts, is that when Family Dollar delivers new shipments of merchandise to its stores, there is routinely insufficient staff to unload the merchandise and insufficient space to store the merchandise. And the staff who are available to unload the merchandise are overworked and insufficiently trained to ensure the merchandise isn't stored in a manner that creates impermissible access barriers. The consequences are routinely and persistently inaccessible stores, cluttered with merchandise and equipment that blocks interior paths of travel.

86.     As evidenced by the widespread inaccessibility of Defendant's stores visited by Plaintiff and the sampling investigation conducted of Defendant's Colorado stores, absent a change in Defendant's regional policies and practices, access barriers are likely to reoccur in Defendant's Colorado stores even after they have been remediated in the first instance.

87.     Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendant's Colorado Family Dollar stores and an injunction to modify the policies and practices that have created or allowed, and will create or allow, access barriers in Defendant's Colorado-region stores.

## CLASS ALLEGATIONS

88.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(2), individually

and on behalf of the following class:

> All persons with qualified mobility disabilities who have attempted, or
> will attempt, to access the interior of any store owned or operated by
> Defendant within Colorado, or, in the alternative, the operational region
> encompassing Defendant's Colorado stores, and have, or will have,
> experienced access barrier(s) in interior paths of travel.

## NUMEROSITY

89.     The class described above is so numerous that joinder of all individual members in

one action would be impracticable. The disposition of the individual claims of the respective class

members through this class action will benefit both the parties and this Court, and will facilitate

judicial economy.

90.     The most currently available population statistics demonstrate that there are

between 14.9 million to 20.9 million persons with mobility disabilities who live in the United

States.[20]

91.     There are approximately 129 Family Dollar stores in Colorado, and given the sheer

number of persons with mobility disabilities in the United States, available statistical evidence

permits a common-sense inference that the numerosity requirement has been met in this matter.

*See, e.g., Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1214-15

---

[20] *See* U.S. CENSUS BUREAU, U.S. DEP'T OF COMMERCE, P70-131, CURRENT
POPULATION REPORTS at 8, 17 (July 2012), *available at*
http://www.census.gov/prod/2012pubs/p70-131.pdf; Erickson et al., 2015 Disability Status
Report: United States at p. 10, Cornell University Yan Tan Institute on Employment and Disability
(2016), *available at* http://www.disabilitystatistics.org/StatusReports/2015-PDF/2015-
StatusReport_US.pdf.

(10th Cir. 2014) (affirming finding of numerosity through comparison of census data to the number of stores the defendant operated).

92.     In addition, Plaintiff anticipates that the record evidence gathered during discovery will further demonstrate that Rule 23(a)(1) has been satisfied in this matter.

### TYPICALITY

93.     Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

94.     Plaintiff presents claims typical of those of the putative class members. Plaintiff and the class members' ability to access and independently use Defendant's stores has been impeded due to access barriers in the stores' interiors. These experiences are the result of Defendant's regionalized policies and practices, which are incapable of ensuring Defendant's stores are readily accessible. Like the putative class members, Plaintiff asserts that Defendant's decision to prioritize profits of the rights of individuals with disabilities results in discrimination. Plaintiff's claims for declaratory and injunctive relief to remedy Defendant's violations of the ADA are typical of the claims of the putative class members because they all have been or will be denied access on the basis of Defendant's actions and failings.

95.     Furthermore, Plaintiff's interests align with the interests of the putative class because she and each class member seek injunctive relief requiring Defendant to make changes to its policies and procedures that are capable of ensuring Defendant's Colorado stores become and remain compliant, and which relief would benefit all members of the proposed class.

## COMMON QUESTIONS OF FACT AND LAW

96.     There is a well-defined community of interest and common questions of fact and law affecting members of the putative class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's stores and/or goods due to Defendant's failure to ensure its stores are readily, fully, and independently accessible and usable as above described. The questions of law and fact that are common to the class include:

a.  Whether Defendant operates places of public accommodation and are subject to Title III of the ADA and its implementing regulations;

b.  Whether storing merchandise and/or merchandise displays in interior aisles of the stores makes the stores inaccessible to Plaintiff and putative class members; and,

c.  Whether Defendant's regional staffing, stocking, and shipping policies and practices discriminate against Plaintiff and putative class members in violation of Title III of the ADA and its implementing regulations.

97.     Because on the resulting deficiencies of Family Dollar's policies and practices, and the geographic delimitation of those policies and practices, as explained above, a regionalized injunction is appropriate in this matter, as was the case in the DOJ's Rhode Island enforcement action. *See, supra*, ¶¶ 66-67.

98.     Whether and to what extent Defendant's policies and practices have caused ADA violations presents a common question with only one answer: Defendant's policies and practices either result in ADA violations or they do not. If Defendant's profit-driven policies and practices to understaff and overload stores within underperforming regions, or on a similar basis, then each class member is entitled to regionalized injunctive relief. On the other hand, if the procedures do not result in these issues, then no class member is entitled to injunctive relief. Either way, this

proceeding will generate a common answer, the determination of which "will resolve an issue… central to the validity of each one [of the class members'] claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

99.     Plaintiff also anticipates the record evidence in this matter will establish factual and legal issues common to Plaintiff and all class members.

## ADEQUACY OF REPRESENTATION

100.    Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

101.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## CAUSE OF ACTION: VIOLATION OF THE ADA

102.    Family Dollar has failed, and continues to fail, to provide individuals who use wheelchairs or scooters with full and equal enjoyment of its stores.

103.    Family Dollar has discriminated against Plaintiff and the class in that Family Dollar has failed to make its Colorado stores fully accessible to, and independently usable by, individuals who use wheelchairs or scooters in violation of 42 U.S.C. § 12182(a) as described above, and for violations of Section 403.5.1 of the 2010 Standards.

104.    Family Dollar has also failed to modify its policies, practices, or procedures when necessary to afford its goods, services, facilities, and/or accommodations to individuals with mobility disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii)

105.    Family Dollar's conduct is ongoing and continuous, and Plaintiff has been harmed by Family Dollar's conduct.

106.    Unless Family Dollar is restrained from continuing its ongoing and continuous course of conduct, Family Dollar will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

107.    Given that Family Dollar has not complied with the ADA's requirements to make its Colorado stores fully accessible to, and independently usable by, individuals who use wheelchairs or scooters, Plaintiff invokes her statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the class, prays for:

a.    A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA, and the relevant implementing regulations of the ADA, in that Defendant's facilities are not fully accessible to and independently usable by individuals who use wheelchairs or scooters;

b.    A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that: (i) directs Defendant to take all steps necessary to remove the access barriers described above and to bring its Colorado facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to,

and independently usable by, individuals who use wheelchairs or scooters; (ii) directs Defendant to change its policies and practices to ensure its facilities are fully accessible to, and independently usable by, individuals who use wheelchairs or scooters; and (iii) directs that Plaintiff shall monitor Defendant's facilities to ensure that the injunctive relief ordered above remains in place;

      c.      An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing her counsel as class counsel;

      d.      Payment of costs of suit;

      e.      Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, and/or nominal damages; and,

      f.      The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: February 28, 2020           Respectfully submitted,

**CARLSON LYNCH, LLP**

*/s/ R. Bruce Carlson*
R. Bruce Carlson
Edwin J. Kilpela, Jr. (CO Bar No. 42927)
Kelly K. Iverson
Bryan A. Fox
1133 Penn Avenue, 5th Floor
Pittsburgh PA, 15222
(412) 322-9243 (Tel.)
ekilpela@carlsonlynch.com
bcarlson@carlsonlynch.com
kiverson@carlsonlynch.com
bfox@carlsonlynch.com

*Attorneys for Plaintiff*